## AFFIDAVIT

I, Aaron Brown, after being duly sworn, depose and state as follows:

1. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been so employed since September 17, 2017. In the course of my employment, I have participated in numerous investigations; the service of arrest, seizure, and search warrants; the interviews of suspects, witnesses, informants, and other persons involved in or having knowledge of violations of law relating to those violations which fall within the scope of the jurisdiction of the Federal Bureau of Investigation.

2. The information in this affidavit comes from my own investigation, as well as bank records and information known to other individuals with firsthand knowledge of the facts contained herein. Because this affidavit is submitted for the limited purpose of supporting a search and seizure warrant, I have not included each and every fact known to the government concerning this investigation, but have only set forth only those facts necessary to establish probable cause for the warrant requested. Because the investigation described below is ongoing, it is requested that this affidavit, as well as the accompanying application be filed **under seal**.

### I. Introduction and Property to Be Seized

3. This affidavit is submitted in support of a warrant to search for and seize the following financial account ("the subject property"), which is subject to seizure and forfeiture up to the amount specified pursuant to 18 U.S.C. §§981, 982, and 984 because it constitutes property involved in mail fraud in violation of 18 U.S.C. §1341, and wire fraud, in violation of 18 U.S.C. §1343: **All Funds Deposited or Credited to Account #887073318037, in the name of Dash Equilibrium, at Bank of America, 1851 S. Interstate 35 E. Frontage Rd, Denton, Texas, 76205, not to exceed $237,258.76.**

**II. Mail and Wire Fraud**

4. To prove a violation of Title 18 U.S.C. 1341, Mail Fraud, the government must show the government must show (1) the accused knowingly participated in, devised or intended to devise a scheme to defraud; (2) the scheme included a material misrepresentation or concealment of a material fact; (3) the accused had the intent to defraud; and (4) the accused used or caused the use of the United States mail delivery system in interstate or foreign commerce in furtherance of the scheme.

5. To prove a violation of Title 18 U.S.C. §1343, Wire Fraud, the government must show (1) the accused knowingly participated in, devised or intended to devise a scheme to defraud; (2) the scheme included a material misrepresentation or concealment of a material fact; (3) the accused had the intent to defraud; and (4) the accused used or caused another to use wire, radio, or television communications in interstate or foreign commerce in furtherance of the scheme.

**III.   Origin of Investigation**

6. The Federal Bureau of Investigation Memphis Division was contacted by Neal Hanna, the owner of Saddle Creek Title Company (title company) located in the Memphis, Tennessee. Hanna advised the FBI his title company was the victim of a check fraud scheme perpetrated by a subject known to him as Steve Pirez. Pirez was buying a real estate property in the Memphis area and Hanna's title company was handling the closing paperwork. Hanna advised his title company had received an official check in the mail from Pirez, made out to Saddle Creek Title Company, in the amount of $250,000. The purchase price of the property, 762 Marechalneil St, Memphis, TN, was approximately $6,000, not including a commission due to the assigning broker and closing costs. The total price for the property, including commissions and closing costs, was approximately $12,000. Pirez provided the title company employees with

a copy of his United States passport and instructions for the title company to wire the excess funds, approximately $237,258.76, to a Bank of America bank account in the name of "Dash Equilibrium." Pirez provided an account number 488073318037 and the necessary information for the title company to wire the funds once the deal was complete. Although the funds were wired to the branch of Bank of America located in the Northern District of Texas, I know from personal observation that Bank of America conducts business and maintains branches in the Western District of Tennessee.

7. Hanna advised the FBI he deposited Pirez's $250,000 check into his bank account and immediately completed the real estate transaction, and wired the remaining $237,258.86 to the Bank of America account identified by Pirez. Paragon Bank subsequently informed Hanna the $250,000 official check was fraudulent. After efforts by Hanna and Paragon Bank to cancel the $237,258.76 wire transfer were unsuccessful, Hanna contacted the FBI.

8. FBI Memphis contacted a law enforcement contact at Bank of America and were able to confirm a wire was received by account number 488073318037 the previous day in the amount of $237,258.76. FBI Memphis requested the funds in the account be frozen due to fraud, and Bank of America agreed to freeze the account for 45 days pending further FBI investigation.

9. FBI Memphis interviewed Hanna at his title company office in an effort to gather more information about the transaction and Pirez. Hanna provided a copy of the file related to the closing of 762 Marechalneil St, Memphis, TN. Hanna explained, the transaction was brought to his title company by a broker by the name of Jonathan Carter. Carter had previously brought deals to Hanna's title company and those transactions closed successfully.

10. FBI Memphis interviewed Jonathan Carter at the FBI Memphis field office. Carter advised he had posted ads for buying and selling properties on various websites and social

3

media platforms in an effort to garner business. Carter had advertised the 762 Marechalneil St, Memphis, TN property on Craigslist. An individual by the name of Steve Pirez contacted Carter and expressed interest in purchasing the property. Pirez provided a phone number of 347-389-9352 and used an email address of Calibresecurities@Gmail.com. Carter has never met Pirez in person. Pirez signed a contract to purchase 762 Marechalneil St, Memphis, TN through the electronic signature company Docusign, and Carter forwarded the contract to the title company for closing. Carter collected approximately $5,000 commission from the deal. Upon being contacted by Hanna and discovering the check from Pirez was fraudulent, Carter called Pirez. Pirez told him that everything was fine and it would be cleared up by Monday when the bank sorts it out. Carter has attempted to contact Pirez since then, but the attempts have not been successful.

11. A review of the title company's file on 762 Marechalneil St. Memphis, TN property included a photocopy of the U.S. passport, which Pirez sent via his email account Calibresecurities@Gmail.com to title company employees. The passport number yielded zero results in FBI database checks. The passport number was also provided to US Customs and Border Protection for a search of their databases with negative results. The passport is likely to be a forgery. FBI Memphis was unable to locate an individual by the name of Steve Pirez.

### III. History of Wire Fraud Involving the Subject Account

12. A review of records obtained from Saddle Creek Title related to the Bank account issued to Dash Equilibrium show a counterfeit check was mailed to Saddle Creek Title, then deposited with Saddle Creek Title to settle the real estate transaction for Marechalneil St, Memphis, TN. An email on Thursday November 14, 2019, was sent from Steve Pirez via Calibresecurities@Gmail.com with wire instructions for Bank of America account number

488073318037 to benefit Dash Equilibrium. The deposited check was returned counterfeit/ fraudulent and credited against Saddle Creek Titles account on Friday November 15, 2019. Saddle Creek Executives placed phone calls to 347-389-9352 Steve Pirez, who assured them it was banking error and would resolve itself by Monday.

### V. Summary of, and Conclusions Regarding, Wire Fraud

13. As indicated above, I have determined that Steve Pirez caused a wire to be sent from Saddle Creek Title of $237,258.76 to Dash Equilibrium via Bank of America Account number 488073318037.

14. Based on my training and experience, I know that this type of activity is indicative of a "Money Mule," typically, someone involved in a financial scam who launders stolen money on behalf of a criminal organization.

### VII. Applicable Forfeiture Principles

#### A. Forfeiture of Property Involved in Mail Fraud and Wire Fraud

15. Title 18 U.S.C. §981(a)(1)(A) makes subject to civil forfeiture "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of section 1956, 1957, or 1960 of this title, or any property traceable to such property." Title 18 U.S.C. §982(a)(1), the criminal forfeiture provision, contains identical language.

16. Title 18 U.S.C. §1343 makes it unlawful to knowingly cause a financial transaction with the intent to defraud, including wire fraud.

17. Property "involved in" a wire fraud transaction in violation of 18 U.S.C. §1343 includes "the actual money laundered, any fees or commissions realized by the launderer, as well as any property used to facilitate the offense." *United States v. Huber*, 404 F.3d 1047, 1056, 1058 (8th Cir. 2005).

5

18. For purposes of these statutes, the actual money laundered includes the criminally derived proceeds involved in a financial transaction, as well as any clean money commingled with it. Both the clean money and the criminal proceeds constitute the corpus of the money laundering transaction and therefore both are subject to forfeiture. *Id. See also United States v. Coffman*, 859 F. Supp.2d 871, 876-77 (E.D. Ky. Apr. 16, 2012) (following *Huber*, explaining that untainted funds may be forfeitable either as the subject of a money laundering transaction or as facilitating property; when tainted money is commingled with clean money for the purpose of obfuscating the origin or existence of the tainted money); *United States v. Funds on Deposit at Bank One, Indiana*, 2010 WL 909091, *8 (N.D. Ind. Mar. 9, 2010) (following *Huber*; when defendant commingled drug proceeds with other funds in a bank account, and transferred the commingled funds to another account, and commingled them yet again before making a third transfer, all of the funds involved in the last transfer were forfeitable as property involved in violations of Sections 1956 and 1957).

### B. Forfeiture of Fungible Property

19. I am advised that, in pertinent part, 18 U.S.C. §984(a) provides:

> (1) In any forfeiture action in rem in which the subject property is cash [or] funds deposited in an account in a financial institution
>
> > (A) it shall not be necessary for the Government to identify the specific property involved in the offense that is the basis for the forfeiture; and
> >
> > (B) it shall not be a defense that the property involved in such an offense has been removed and replaced by identical property.
>
> (2) Except as provided in subsection (c) any identical property found in the same place or account as the property involved in the offense that is the basis for the forfeiture shall be subject to forfeiture under this Section.

20. I am further advised that the "fungibility" rule of §984(b) cannot reach back in time for an unlimited period. Section 984(b) provides that, "[n]o action pursuant to this section to forfeit property not traceable directly to the offense that is the basis for the forfeiture may be commenced more than 1 year from the date of the offense."

21. I am advised that, in enacting this limitations period, Congress explained that, "property is subject to forfeiture [under §984] if not more than one year has passed between the time the original property subject to forfeiture was so located or maintained and the time the forfeiture action was initiated by seizing the property or filing the complaint." H.Rep. 102-28, 102d Congress (1991) at 47-48, 1991 WL 42201.

### III. Conclusion

22. Based on the foregoing, I believe that Steve Pirez, and/or others acting with or on his behalf, utilized interstate communications with intent to defraud to transfer cash totaling $237,258.76 from the Saddle Creek Title bank account to Steve Pirez, through the use of a counterfeit bank check and the Dash Equilibrium bank account at Bank of America. Therefore, the contents of the subject account constitute property involved in or traceable to violations of 18 U.S.C. §1343 up to the amount of $237,258.76 and as such, are subject to forfeiture pursuant to 18 U.S.C §§981, 982, and 984.

Aaron Brown, Special Agent
Federal Bureau of Investigation

Sworn and subscribed before me
This 26th day of November, 2019

Diane K. Vescovo
United States Magistrate Judge

7